**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: TIKTOK IN-APP BROWSER PRIVACY LITIGATION ) ) ) _____ ) | MDL Docket No. _____ |

**FIRST-FILED PLAINTIFF AND MOVANT AUSTIN RECHT'S MEMORANDUM OF LAW AND FACT IN SUPPORT OF MOTION FOR TRANSFER AND COORDINATION AND CONSOLIDATION OF RELATED IN-APP BROWSER ACTIONS IN THE CENTRAL DISTRICT OF CALIFORNIA, UNDER 28 U.S.C. § 1407**

First-Filed Plaintiff and Movant Austin Recht ("Movant") respectfully submits this Memorandum of Law and Fact in Support of his Motion for Transfer and Consolidation of the Related In-App Browser Actions in the Central District of California, under 28 U.S.C. § 1407.

## I.    INTRODUCTION

Pursuant to 28 U.S.C. § 1407, Movant seeks an Order: (i) transferring to the Central District of California the related cases listed in the Schedule of Actions attached as Exhibit A (the "Related In-App Browser Actions"), and any other tag-along actions asserting related claims against Defendants TikTok Inc. (f/k/a Musical.ly, Inc.); ByteDance Inc.; Beijing Douyin Information Service Co. Ltd. a/k/a ByteDance Technology Co. Ltd.; and Douyin Ltd. a/k/a ByteDance Ltd., (collectively, "Defendants"), and (ii) consolidating or coordinating the Related In-App Browser Actions with the *Recht* Action for pretrial discovery and class certification purposes.

The Related In-App Browser Actions allege that class members' legal rights were violated by Defendants' use of an in-app browser that unknowingly and illegally intercepted class members' wire communications with third-party websites using JavaScript code insertions. These JavaScirpt code insertions intercepted *every detail* about class members' activity on third-party websites, including keystrokes, website activity, contact information and credit card data.

1

Transfer and consolidation in the Central District of California is necessary under Section 1407 to promote efficient management of the litigation because:

- The Related In-App Browser Actions all involve the same illegal conduct – TikTok's secret use of an "in-app browser" to illegally intercept every detail of users' activities on third-party websites.

- The Related In-App Browser Actions all involve similar actions by class members – their unknowing use of TikTok's in-app browser to access third-party websites.

- The Related In-App Browser Actions all involve similar kinds of data that was intercepted by Defendants from the wire communications – every detail about consumers' activities that occurred in the in-app browser, including website activity, contact information, and credit card data.

- The Related In-App Browser Actions all involve nearly identical legal claims – violations of the Federal Wire Tap Act and/or violations of similar state wiretap acts like the California Invasion of Privacy Act or the Pennsylvania Wiretap and Electronic Surveillance Control Act.  Multiple actions also assert claims for unjust enrichment and/or disgorgement based on their respective state's laws.

- All of the Related In-App Browser Actions will require similar discovery, necessarily focusing on the same documents, ESI, witnesses, and other evidence pertaining to Defendants' in-app browser and the tracking code contained therein.  Absent consolidation, duplicative discovery and potentially conflicting rulings may result.

- The Central District of California is where TikTok, Inc.'s headquarters is located, where the nefarious conduct occurred, and thus where most of the relevant evidence and witnesses are located.

- The Related In-App Browser Actions involve overlapping putative classes, as the majority of the pending actions seek to certify nationwide and/or state classes of TikTok users who visited third-party websites via Defendants' in-app browser. Absent consolidation, the federal district courts in California, New York, and Pennsylvania, among others, could issue conflicting dispositive rulings regarding the classes before them.

- The case currently pending in the Central District of California is the first-filed case.

For their part, Defendants have already attempted to thwart the claims of injured class members. Defendants recently filed a purported "Notice of Potential Tag-Along Action" (the "Notice") erroneously asserting that Movant's case involves questions of fact common to the now-concluded *In re TikTok, Inc., Consumer Privacy Litigation* (MDL No. 2948) (the "*Biometric Data* MDL").[1] The Notice prompted the JPML Clerk to issue a Conditional Transfer Order and briefing schedule. Movant intends to oppose Defendants' erroneous attempt to force this case into an unrelated MDL where final judgment has been entered, pending appeals have been dismissed, and settlement funds have been distributed to class members. *See In re TikTok, Inc. Consumer Privacy Litig.*, No. 1:20-cv-04699, ECF No. 280 (N.D. Ill. Nov. 30, 2022) ("Pursuant to the Final Judgment and the October 12, 2022 Order of Dismissal, therefore, ***the Final Judgment became effective and this MDL and all member cases have been terminated***.") (emphasis added); *see id.* ("As of November 21, 2022, the majority of the $92,000,000.00 settlement fund has been distributed and only $3,244,884.27 remains."). In sum, a transfer and coordination of the Related In-App Browser Actions with the *Biometric Data* MDL is not appropriate for at least the following reasons:

---

[1] Given Defendants' actions, any attempt to informally coordinate the Related In-App Browser Actions pursuant to 28 U.S.C. § 1404 would be futile.

- The *Biometric Data* MDL involved consumers who used the TikTok app *prior to September 30, 2021* and whose *biometric* data was extracted by defendants from the users' shared videos. It did not include the on-going in-app browser conduct at issue here. Specifically, the *Biometric Data* MDL settled claims on behalf of a class of TikTok app users who used the TikTok video-sharing application.[2] That definition specifically contemplates use of TikTok's video creation and sharing function, and ***does not*** include use of Defendants' in-app browser as alleged in the Related In-App Browser Actions.

- Nothing in the *Biometric Data* MDL indicates that those plaintiffs were aware of, or based their claims on, the existence of Defendants' in-app browser, which is separate from the TikTok video-sharing application and is used only when class members access third-party websites and JavaScript code is secretly inserted by Defendants.

- Plaintiffs in the *Biometric Data* MDL made clear that their claims rested on the collection of a TikTok app user's *biometric* information or identifiers, a TikTok app user's geolocation or GPS data, and pre-uploaded user-generated content collected from users who created videos but did not save or post them, among others.[3] Critically, none of the claims in the *Biometric Data* MDL is based on the Federal Wire Tap claim. Indeed, the plaintiffs there do not ever mention that their activity on third-party websites were unknowingly and illegally intercepted by Defendants via the TikTok in-app browser or that JavaScript insertions on third-party websites were the defendants'

---

[2] *See*, *In re TikTok, Inc. Consumer Privacy Litig.*, No. 1:20-cv-04699, ECF No. 122 at 12 (N.D. Ill. Feb. 25, 2021).
[3] *See*, *In re TikTok, Inc. Consumer Privacy Litig.*, No. 1:20-cv-04699, ECF No. 122 at 14, 30-31 (N.D. Ill. Feb. 25, 2021).

means of intercepting every detail about an individual's activity on such third-party websites.

**II.    BACKGROUND**

This case involves class members' attempts to access third-party websites while using the TikTok app. Unbeknownst to such TikTok users, Defendants' in-app browser inserted JavaScript code into the third-party websites accessed by class members which allowed Defendants' to illegally intercept wire communications meant for the third-party websites, in the form of tracking every detail about class members' activity on those websites. Through this tracking activity, Defendants invaded the privacy of Movant and Class members, all without their consent, and gathered private information including users' keystrokes, website activity, their contact information, and their credit card data.

On November 25, 2022, Movant filed the first Complaint on behalf of nationwide and California classes of persons who were unknowingly forced to use TikTok's in-app browser to access third-party websites. Movant asserts claims for violations of the Federal Wire Tap Act, California Invasion of Privacy Act, Comprehensive Computer Data Access and Fraud Act, California Business & Professions Code § 17200, Invasion of Privacy and Violation of the California Constitution, common law invasion of privacy, and unjust enrichment.

All the Related In-App Browser Actions are at an early procedural stage, favoring consolidation. *See In re BP p.l.c. Sec. Litig.*, 734 F. Supp. 2d 1376, 1379 (J.P.M.L. 2010) (where "actions in this docket are at an early stage, transfer to another district should not be unduly disruptive"). To Movant's knowledge, he is the only plaintiff who has served any of the Defendants or received appearances by their counsel.

## III.   ARGUMENT

### A.   Transferring the Related In-App Browser Actions for Coordinated Pretrial Proceedings in a Newly Formed MDL is Proper.

Section 1407(a) permits transfer and consolidation or coordination of cases where: (1) the civil actions involve "one or more common questions of fact," (2) transfer and consolidation or coordination will further "the convenience of the parties and witnesses" and (3) transfer and consolidation or coordination "will promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a). Each of these factors is met here.

The Related In-App Browser Actions are based on the same or substantially similar questions of law and fact. Transfer will promote the convenience of the parties and efficiency in the pretrial proceedings by eliminating duplicative discovery and the potential for inconsistent rulings, including determinations on class certification. Indeed, because all of the Related In-App Browser Actions assert complex, yet virtually identical claims and allegations requiring substantial discovery into highly technical aspects of Defendants' programming, coding, and management of the Defendants' in-app browser, they are ideal candidates for transfer for coordinated or consolidated pretrial proceedings.

#### 1.   The Related In-App Browser Actions Involve Common Questions of Fact.

The first requirement of Section 1407 – that actions involve common questions of fact – is satisfied here. The factual issues to be determined in each of the actions proposed for transfer and coordination arises from the same course of conduct by Defendants and are, therefore, identical for pretrial purposes. *See In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1371 (J.P.M.L. 2004). Common questions of fact and law at issue in the Related In-App Browser Actions include, but are not limited to, the following:

6

a. Whether Defendants' undisclosed in-app browser inserted JavaScript code into third-party websites viewed by class members;

b. Whether the JavaScript codes inserted into third-party websites tracked every detail, including keystrokes, of class members activities on third-party websites while using the undisclosed in-app browser;

c. Whether the JavaScript codes inserted into third party websites intercepted wire communications between class members and third-party websites.

d. Whether Defendants violated the Federal Wire Tap Act, 18 U.S.C. §§ 2510, *et seq.*;

e. Whether Defendants violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.*;

f. Whether Defendants violated the California Comprehensive Computer Data Access and Fraud Act Cal. Penal Code § 502, et seq.

g. Whether Defendants violated California Business & Professions Code §§ 17200, *et seq.*;

h. Whether Defendants violated the California Constitution, Art 1., § 1;

i. Whether Defendants violated the Pennsylvania Wiretap and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.*;

j. Whether Movant and the Class Members are entitled to equitable relief including, but not limited to, injunctive relief, restitution, and disgorgement; and

k. Whether Movant and the Class Members are entitled to actual, statutory, punitive, or other forms of damages, and other monetary relief.

A brief review of the pleadings reveals that the factual issues to be determined in each of the actions are nearly identical. Such identical issues across all Related In-App Browser Actions warrant consolidation. *See In re Neurontin Mktg. & Sales Practices Litig.*, 342 F. Supp. 2d 1350, 1351 (J.P.M.L. 2004) (finding existence of common issues to warrant transfer where "[a]ll actions are purported class actions involving allegations that common defendants have engaged in the illegal promotion and sale of the drug Nuerontin"); *In re Ephedra Prods. Liab. Litig.,* 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004) ("Common factual questions arise because these actions focus on alleged side effects of ephedra-containing products, and whether defendants knew of these side effects and either concealed, misrepresented or failed to warn of them.").

### 2. Consolidating the Related In-App Browser Actions into a Newly Formed MDL Will Further the Convenience of the Parties and Witnesses.

Consolidation of the Related In-App Browser Actions will also satisfy the second requirement of § 1407 because it will serve the convenience of the parties and witnesses. Discovery in all of the Related In-App Browser Actions will necessarily focus on the same kinds of documents, witnesses, and other evidence pertaining to Defendants' programming, development, and use of the in-app browser, decision to include coding for JavaScript insertions into program for the in-app browser, and intercept of wire communications including class members' personal data.

These subjects are complex and highly technical and will require substantial discovery and entail significant expense. Because these actions arise from nearly identical factual allegations, duplicative discovery demands, and redundant depositions are inevitable without transfer and coordination or consolidation. Coordination of the actions would enable a single District Judge to establish a pretrial schedule, thereby minimizing inconveniences and expenses.

### 3. Transfer and Consolidation into a Newly Formed MDL Will Promote Just and Efficient Conduct of the Related In-App Browser Actions.

Transfer and coordination will also promote the just and efficient adjudication of the Related In-App Browser Actions since they raise nearly identical questions of fact and law. Plaintiffs in each Related In-App Browser Action will likely seek substantially similar documents from similar custodians and non-custodial sources, and then seek to depose the same individuals and experts. Given Defendants' location in California, witnesses, documents, and any other evidence will likely all be found in California, including the Central District where TikTok Inc. is headquartered and maintains its principal place of business.

Failure to consolidate these actions could, therefore, result in unnecessary and duplicative discovery; witnesses would have to appear for multiple depositions outside of their home jurisdiction, and Defendants would have to negotiate and produce multiple sets of overlapping documents. Moreover, failure to consolidate or coordinate the Related In-App Browser Actions would likely result in disparate discovery outcomes regarding nearly identical documents and witnesses. Consolidation and coordination of the actions would avoid this needless waste of resources and confer benefits upon both the Plaintiffs and Defendants (including their witnesses and employees). *See In re: Vizio, Inc., Consumer Priv. Litig.,* 176 F. Supp. 3d 1374, 1376 (U.S. Jud. Pan. Mult. Lit. 2016).

Also, the fact that the Related In-App Browser Actions seek to certify overlapping classes opens the possibility of inconsistent rulings on certification issues and weighs heavily in favor of transfer and consolidation. Consolidation will bring a uniformity of decision to motions before the court, including discovery matters which, as discussed above, will almost certainly overlap. Instead of different courts applying differing standards, one court will be tasked with rendering uniform decisions. This will bring clarity to litigants and the relevant bodies of case law regarding

the same factual and legal issues that will undoubtedly arise. *See Neurontim*, 342 F. Supp. 2d at 1351; *Ephedra,* 314 F. Supp. 2d at 1375; *In re European Rail Pass Antitrust Litig.*, MDL No. 1386, 2001 WL 587855, at *1 (J.P.M.L. Feb. 7, 2001) (transferring actions all involving similar allegations to single district to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary").

Lastly, the programming, coding, and development of the in-app browser at issue is complex and highly technical and will necessarily require a substantial amount of costly electronic discovery and extensive expert analysis and testimony. *See In re Clark Oil & Refining Corp. Antitrust Litig.*, 364 F. Supp. 458, 459 (J.P.M.L. 1973) (ordering consolidation of two actions because "the greater complexity of factual issues presented here and the presence of competing requests for class designation distinguish this litigation from the Scotch Whiskey cases and make transfer necessary in order to avoid duplication of discovery and eliminate the possibility of conflicting pretrial rulings."); *In re Nissan Motor Corp. Antitrust Litig.*, 352 F. Supp. 960, 961 (J.P.M.L. 1973) (similar).

### B. The In-App Browser Actions Should be Transferred to the Honorable Maame Ewusi-Mensah Frimpong or Another Qualified Judge in the Central District of California for Consolidated Pretrial Proceedings.

The factors the Panel looks to when selecting a transferee district weigh strongly in favor of selecting the Central District of California. *See* MANUAL FOR COMPLEX LITIGATION § 20.1 (4th ed. 2004) ("The Panel uses no single factor to select the transferee district, but the Panel does consider where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges.") (citation omitted). The balance of these factors weighs in favor of transfer to the Central District.

First, there is no question that the jurisdiction in which Defendants' conduct occurred and gave rise to class members' injuries – whether those class members were in California, Pennsylvania, or New York – is the Central District of California. As all of the Related In-App Browser Actions confirm, Defendant TikTok, Inc. is a resident of Culver City, California (located squarely within the Western Division, of the Central District of California), and its co-Defendant ByteDance, Inc. is also a resident of and doing business in California. Movant's complaint alleges that decisions about the in-app browser were made by executives at TikTok, Inc. in conjunction with executives from ByteDance, Inc. and foreign entities. Even then, the majority of those decisions would have been operationalized through TikTok, Inc.'s offices located in the Central District of California.

Second, cost and inconvenience would be minimized by selecting the Central District of California. Plaintiffs across all the Related In-App Browser Actions will be seeking the depositions of TikTok, Inc. employees located in the Central District of California and the production of documents, which are highly likely to be located in the Central District of California at TikTok Inc.'s headquarters in Culver City. Furthermore, Culver City is located within the Los Angeles metropolitan area, which is a convenient metropolitan center containing five major airports, including Los Angeles International Airport. Notably, Culver City is located conveniently close to the courthouse in which Movant's action is currently pending. Accordingly, witnesses from within and outside of the Central District will be able to access Southern California with ease.

Third, the first-filed In-App Browser Action was filed in the Central District of California.

Fourth, the "experience, skill, and caseloads of available judges" weighs in favor of transfer to the Central District of California. Several multi-district litigation proceedings have been

transferred and managed successfully by Judges in the Central District of California. According to the latest MDL Statistics Report, as of November 15, 2022, the Central District of California currently oversees only four MDL actions.[4] Thus, the Central District of California, a major metropolitan Court, has both the experience and the available judicial resources to handle this MDL.

Movant submits that the Honorable Maame Ewusi-Mensah Frimpong, the Judge presiding over *Recht v. TikTok Inc., et al.*, Case No. 2:22-cv-08613 is a well-qualified jurist who can effectively manage an MDL. While she is a relatively new jurist on the federal bench, she has over 20 years of legal experience with a breadth of practice that speaks to her skill and qualifications. Specifically, Judge Frimpong served for five years as a Judge of the Los Angeles Superior Court, held positions within the U.S. Department of Justice where her practice covered the full spectrum of federal law, including consumer protection claims, worked with the Attorney General's Office regarding civil and consumer protection claims, and a clerked under the Hon. Stephen A. Reinhardt.

Judge Frimpong also has, as an available resource, the benefit of many other skilled and experienced jurists within the Central District of California who have managed complex MDL cases before her. If Judge Frimpong is found by the Panel to not have the judicial experience necessary to handle this MDL, Movant respectfully submits that other Judges in the Central District of California possess the qualifications and skill to preside over this MDL.

---

[4] *MDL Statistics Report – Distribution of Pending MDL Dockets by District* (November 15, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-November-15-2022.pdf.

### C. The In-App Browser Actions Should Not Be Transferred to the Northern District of Illinois and Consolidated with the Now-Concluded *Biometric Data* MDL.

Here, none of the factors that the Panel normally considers weigh in favor of transfer to the Northern District of Illinois where the now-concluded *Biometric Data* MDL was located.

First, none of the facts giving rise to class members' injuries in the Related In-App Browser Actions occurred in Illinois and no cases have been filed in Illinois, let alone in the Northern District. Moreover, none of the Defendants are organized in Illinois, nor do they maintain a principal place of business in Illinois. There are also no allegations suggesting that any decisions were made or operationalized there.

Second, cost and inconvenience would be increased by selecting the Northern District of Illinois. Neither Plaintiffs nor Defendants (or their counsel) are located in Illinois. There is no reason to compel Plaintiffs and their counsel from California, Pennsylvania, and New York to fly to Illinois for a case whose genesis is in Central District of California.

Third, the "experience, skill, and caseloads of available judges" weighs in favor of transfer to the Central District. While the Central District of California is currently only presiding over four multi-district proceedings, the Northern District of Illinois is currently presiding over fourteen.

Finally, none of the factors that persuaded the Panel to transfer the now concluded *Biometric Data* MDL to the Norther District of Illinois justify a similar transfer of the Related In-App Browser Actions. In transferring the *Biometric Data* MDL, the Panel noted that the majority of the pending cases were filed in the Northern District of Illinois and that those cases had been proceeding in an organized fashion (including through consolidation, appointment of lead counsel,

13

and the filing of a consolidated complaint).[5] None of that can be said of the Related In-App Browser Actions. It will remain to be seen whether any other plaintiffs support the idea of transfer to the Northern District of Illinois, but it should be noted that Defendants TikTok, Inc. and ByteDance, Inc. previously favored transfer to California.[6] Finally, it cannot be ignored that the cases that were transferred to the Northern District of Illinois relied heavily on the allegation that Defendants collected biometric data about class members in violation of Illinois's Biometric Information Privacy Act.[7] No such claim is at issue in the In-App Browser Actions.

## IV.  CONCLUSION

For each of the foregoing reasons, Movant respectfully requests an Order: (i) transferring to the Central District of California the related cases listed in the Schedule of Actions attached as Exhibit A (the "Related In-App Browser Actions"), and any other tag-along actions asserting related claims against Defendants TikTok Inc. (f/k/a Musical.ly, Inc.); ByteDance Inc.; Beijing Douyin Information Service Co. Ltd. a/k/a ByteDance Technology Co. Ltd.; and Douyin Ltd. a/k/a ByteDance Ltd., (collectively, "Defendants"), and (ii) consolidating or coordinating the Related In-App Browser Actions with the *Recht* Action for pretrial discovery and class certification purposes.

Dated:   December 15, 2022         Respectfully submitted,

By:  */s/ Roland Tellis*
BARON & BUDD, P.C.
Roland Tellis
rtellis@baronbudd.com
Sterling Cluff
scluff@baronbudd.com
David Fernandes

---

[5] *See*, *In re TikTok, Inc., Consumer Privacy Litig.*, MDL No. 2948, ECF No. 82 at 1-2 (J.P.M.L. Aug. 4, 2020).
[6] *Id*. at n.4
[7] *See*, *In re TikTok, Inc., Consumer Privacy Litig.*, 1:22-cv-04699, ECF No. 114 at 110-14.

14

dfernandes@baronbudd.com
Shannon Royster
sroyster@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
Facsimile: 818-986-9698

Don Bivens
don@donbivens.com
DON BIVENS PLLC
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: 602.708.1450

Counsel for Plaintiff Austin Recht and the putative class
(*Recht, v. TikTok Inc. et al.*, Case No. 2:22-cv-08613 (C.D. Cal. Nov. 25, 2022))