BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| *In re: TikTok In-App Browser Privacy Litigation* | MD No. 3067 |

**PLAINTIFF ANIBETH BRAVO'S**
**RESPONSE TO MOTION TO TRANSFER**

**I.     INTRODUCTION**

Plaintiff Anibeth Bravo ("Plaintiff"), the Plaintiff in *Bravo v. TikTok, Inc., et al.*, No. 1:23-cv-00225 (N.D. Ill.), pursuant to 28 U.S.C. § 1407 and Panel Rule 6.1(d), through the undersigned counsel, hereby submits this Response to the Motion to Transfer. ECF No. 1. Plaintiff agrees that centralization is appropriate and necessary here but the Northern District of Illinois is the best situs for all of the cases, rather than the Central District of California, as Movant suggests. All the related cases (the "Member Cases") span the 2,500 mile entirety of the continental United States, with cases in the Southern District of New York, District of New Jersey, Eastern District of Pennsylvania, Northern District of Illinois, and Central District of California. Most parties will be required to travel to prosecute this case, regardless of the venue chosen, but the Northern District of Illinois represents the most central location and the only location where every party is less than five hours away by air.

**II.    BACKGROUND**

Plaintiff's action, like all other actions in the Member Cases, stems from Defendants'—TikTok Inc. and Bytedance Inc. (collectively "TikTok" or "Defendants")—unlawful practice of surreptitiously intercepting Plaintiff's and other consumer's private electronic communications in violation of the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq*. and analog state causes of action. All Member Cases are based on the same core allegations. As one of the world's fastest-growing social media companies, TikTok has been installed over 100 million times in the United States. *Bravo* Complaint (JPML ECF No. 29-3) at ¶ 20. Data is extremely valuable and TikTok has wasted no time leveraging the viewing habits and private data of its millions of users. *Id.* at ¶¶ 23-25. In particular, the TikTok app serves links clicked by its users through an in-app browser instead of users' preferred or default internet browsers, and TikTok in turn designed its in-app browser to

1

intercept, record, and copy all users' web browsing activity, *Id.* at ¶ 35. This highly invidious design no doubt benefits TikTok's bottom line, but it also violates the Federal Wiretap Act and similar state law statutes. *Id.* at ¶ 1.

All of the Member Cases were filed within weeks of each other. Plaintiff Recht filed his complaint in *Recht v. TikTok Inc., et al.*, Civ. 22 No. 08613 (C.D. Cal.) on November 25, 2022. The other five Member Cases were all filed in December of 2022. Plaintiff Kowalski filed her complaint in *Kowalski v. TikTok Inc., et al.*, Civ. 22 No. 04947 (E.D. Penn.) on December 13 in the Eastern District of Pennsylvania. Plaintiff E.K. (a minor) filed their complaint in *E.K. v. TikTok Inc., et al.*, Civ. 22 No. 10574 (E.D.N.Y.) in the Eastern District of New York on December 14.

Plaintiff Recht filed his Motion for Transfer and Consolidation of Actions Pursuant to 28 U.S.C. § 1407 to the Central District of California on December 15, 2022. ECF No. 1. Thereafter, Plaintiff Fleming filed her complaint in *Fleming v. TikTok Inc., et al.,* Civ. 22 No. 07370 (D.N.J.) in the District of New Jersey on December 19, 2022, Plaintiff Arroyo filed her complaint in *Arroyo v. TikTok Inc., et al.*, Civ. 22 No. 09300 (C.D. Cal.) in the Central District of California on December 22, 2022, and Plaintiff Rahn filed his complaint in *Rahn v. TikTok Inc., et al.*, Civ. 22 No. 07256 (N.D. Ill.) in the Northern District of Illinois on December 27, 2022. Plaintiff Bravo filed her complaint on January 13, 2023 by the undersigned counsel.

**III.    ARGUMENT**

    **A.    The Litigation Satisfies the Requirements for Consolidation and Transfer Under 28 U.S.C. § 1407.**

Pretrial transfer and consolidation under § 1407 is appropriate and necessary here. The privacy rights of millions of people are at stake, and the cases filed against TikTok—the most recent of which was filed mere weeks ago—are likely to be numerous. Moreover, they involve the same allegations and legal standards. All of the actions allege similar violations, including, but not

2

limited to, the Federal Wiretap Act, against TikTok based on the same in-app browser and a single set of policies, practices, and procedures. All of the actions generally seek certification of a similar class of persons. Unless these cases are consolidated, the parties will incur excessive costs due to duplicative discovery and will face the risk of inconsistent rulings.

1. **The Litigation Involves Common Questions of Fact.**

In assessing the appropriateness of consolidation under § 1407, the Panel looks to the pleadings to determine the extent to which common questions of fact are present. The Complaints in these cases clearly present common questions of fact. Each Complaint is based on allegations that TikTok, through its in-app browser, secretly monitored, recorded, and monetized the electronic communications and web browsing history of all of its users. *See Bravo* Compl ¶ 1 ("Defendants intercept [users'] private electronic communications in violation of the Federal Wire Tap Act, 18 U.S.C. § 2510, et seq. by embedding JavaScript code into the third-party websites that are accessed using TikTok's in-app browser, which enables Defendants to track users' mouse movements, clicks, keystrokes . . . and other electronic communications in real time. …"); *Rahn* Compl (ECF No. 16-3) ¶ 1 ("Defendants intercept [users'] private electronic communications . . . by embedding JavaScript code into the third-party websites that are accessed using TikTok's in-app browser, which enables Defendants to track users' mouse movements, clicks, keystrokes [], URLs of web pages visited, and other electronic communications in real time."); *E.K.* Compl. (ECF No. 1-5) ¶ 3 ("through a covert JavaScript code, [TikTok] tracks every single detail of a user's [in-app web browser] activity."); *Fleming* Compl. (ECF No. 5-3) ¶ 4 ("the in-app browser inserts JavaScript code into the websites visited by TikTok users . . . to track every detail about TikTok users' website activity"); *Kowalski* Compl. (ECF No. 1-6) ¶¶ 1 ("Defendants employ JavaScript computer code to track users' every move as they browse the Internet from within the TikTok app"); *Recht* Compl. (ECF No. 1-4) ¶¶ 3–4 (TikTok's "in-app browser inserts JavaScript

code into the websites visited by TikTok users. The clear purpose of the JavaScript code inserted into these websites is to track every detail about TikTok users' website activity.."); *Arroyo* Compl. (ECF No. 11-3) ¶ 4 ("As users browse a third-party website from within the TikTok app, they do so via TikTok's in-app web browser (with no option to use the mobile phone's default web browser), and [TikTok] intercepts and records the user's electronic communications.").

Further, the Complaints seek certification of similar, nationwide classes. The Class is defined in the *Bravo* Complaint as:

*All persons in the United States who used TikTok's in app browser to visit websites external to the app.*

*Bravo* Compl. ¶ 44.  The Classes are identically or nearly identically defined in the other Member Cases.  *Compare id.*; *with Rahn* Compl ¶ 42 (same); *Recht* Compl. ¶ 145 (same); *Fleming* Compl. ¶ 106 (same); *Arroyo* Compl. ¶ 50 (same); *Kowalski* Compl. ¶ 46 (defining a class of all citizens of Pennsylvania who used TikTok's in-app browser while in Pennsylvania); *E.K.* Compl. ¶ 48 (defining the class as all minors who used TikTok's in-app browser).  Accordingly, this factor is easily satisfied.

        2.    **The Parties Face Duplicative Discovery Absent Transfer and Consolidation**.

Because the factual and legal allegations of each of the cases are essentially the same, the parties face duplicative discovery if the cases are not consolidated and transferred. This is an important consideration for the Panel in that transfer and consolidation "ensure that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980). The parties in these

actions will necessarily engage in duplicative discovery. All Plaintiffs will be seeking the same discovery from TikTok and will likely request to depose the same witnesses. In response, TikTok will raise the same class certification and discovery objections, seek the same protective orders and assert the same privileges in each case. However, if the Panel consolidates and transfers the cases, the parties will be able to coordinate their efforts and thus save all parties—and the courts—time and money.

### 3. **Transfer and Consolidation Will Prevent Inconsistent Pretrial Rulings**.

The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re Enron Securities Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification). Because of the similarity of the allegations in the Complaints, and the likelihood that future filed actions will contain the same or similar allegations, the possibility of inconsistent rulings on pretrial motions is substantially increased. TikTok is likely to present the same pretrial motions in each action and assert the same discovery objections and privileges. As an example, Plaintiff anticipates that TikTok will file motions to dismiss and/or for summary judgment. Inconsistent rulings on those dispositive motions would pose a serious problem, in that the putative Class is generally the same in each action. Additionally, because of the similarity in the allegations, TikTok will assert the same defenses in opposition to the various Member Case Plaintiffs' claims, creating a real risk of inconsistent pretrial rulings. In light of this, it would be in the best interests of all involved—the parties, the witnesses, and the courts— to transfer and centralize these actions.

      4.      **There is Sufficient Numerosity to Support Transfer and Centralization.**

In addition to the Member Cases pending, and it can be reasonably anticipated that more suits will follow. This is a high-profile case that has already received a great deal of pretrial publicity, new plaintiffs continue to file additional cases daily, and numerous actions will likely be filed against TikTok in a multitude of districts, making transfer and consolidation essential. In any event, the Panel has routinely ordered transfer and consolidation of three or fewer cases. *See In re Wireless Telephone Replacement Protection Programs Litig.,* 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (granting transfer and centralization of three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer of two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation); *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer of three cases involving patent and antitrust issues); *In re Alodex Corp.*, 380 F. Supp. 790, 791 (J.P.M.L. 1974) (granting transfer of three securities actions). There is therefore sufficient authority for the transfer and consolidation of the actions given the number of currently pending Member Cases against TikTok, even without more cases being filed.

    **B.**    **The Northern District of Illinois is the Best Transferee Forum.**

The Northern District of Illinois is the most central and accessible court for consolidation of pretrial proceedings especially because all Member Cases are spread throughout the nation. As the Panel has noted, "there is . . . something to be said for the convenience of a geographically central forum in coast-to-coast litigation." *See, e.g., In re Library Editions of Children's Books*, 297 F. Supp. 385, 387 (J.P.M.L. 1968) (case in which constituent actions spanned the country,

with many actions in California and on the East Coast, which was to the Northern District of Illinois).

In addition, Defendants conduct substantial business in the Northern District of Illinois, including placing its app into the stream of commerce directed at millions of consumers within the Northern District of Illinois and within the State of Illinois. *Bravo* Compl. ¶ 10. Because the named Plaintiffs in the Member Cases live across the United States and used TikTok's in-app browser in New York, New Jersey, Pennsylvania, Illinois, and California, the Northern District of Illinois is the most- logical "center of gravity" for all of the actions. The district is a natural mid-point between all named Plaintiffs. It is a highly accessible and convenient location for all parties to the Member Cases because it is located in Chicago, a metropolitan area with a major airport in central proximity to Defendant's headquarters on the West coast and Member Case Plaintiffs' places of residence outside of Illinois on the West and East coasts. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, 276 F. Supp. 3d 1382, 1383 (J.P.M.L. 2017) (centralizing cases in "a centrally-located and easily accessible location"); *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017) (same); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d 1379, 1381 (J.P.M.L. 2002) (transferring to the district which was "an accessible and convenient location for [the] parties.").

Furthermore, Defendants are similarly nationally situated with major operations in both Los Angeles and New York,[1] and offices in between including in Nashville, Tennessee[2], Austin,

---

[1] *See* https://www.tiktok.com/about?lang=en (last visited January 9, 2023).

[2] *See* https://www.bizjournals.com/nashville/news/2022/01/26/report-tiktok-leases-3-floors.html (last visited January 10, 2023).

7

Texas[3] and Chicago, Illinois.[4]  Defendants thus will hardly be inconvenienced if the Panel transfers the actions to the Northern District of Illinois.  Nor will the named Plaintiffs in California, who will have far less to travel than the Pennsylvania and New York parties who would otherwise have to catch a 6+ hour cross-country flight to Los Angeles.

Finally, while the Panel often weighs when each action was filed, the Member Cases were filed within approximately a month or two of one another, and so no case is substantially more developed than the others. *See In re: Skechers Toning Shoe Prod. Liab. Litig.*, 831 F. Supp. 2d 1367, 1370 (U.S. Jud. Pan. Mult. Lit. 2011) (first-filed actions are favored where the action is "filed several months before most other actions.").

### IV.     CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that all actions be consolidated and transferred to the Northern District of Illinois.

Dated: January 24, 2023                                      Respectfully submitted,

*/s/ Michael R. Reese*
Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: mreese@reesellp.com

*Attorney for Plaintiff Anibeth Bravo and the Putative Class*

---

[3] *See* https://austonia.com/tiktok-downtown-austin-tower (last visited January 10, 2023).

[4] *See* https://www.chicagobusiness.com/commercial-real-estate/tiktok-plans-chicago-hiring-spree-eyes-fulton-market-office (last visited January 10, 2023).